IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MADELINE CANCEL-VIENTÓS**,
    Petitioner,

v.

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

Civil No. 24-1399 (BJM)

**OPINION AND ORDER**

Madeline Cancel-Vientós ("Cancel-Vientós") seeks review of the Commissioner of the Social Security Administration's (the "Commissioner") finding that she is not entitled to benefits under the Social Security Act, 42 U.S.C. § 423. Cancel-Vientós contends that the administrative law judge's ("ALJ") decision finding her not disabled contains procedural errors and is at odds with the evidence of her disability. Docket No. ("Dkt.") 12. The Commissioner opposed. Dkt. 15. The case is before me with the consent of the parties. Dkts. 5, 6.

For the following reasons, the Commissioner's decision is **AFFIRMED**.

**STANDARD OF REVIEW**

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 42 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987). In other words, "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ . . . [i]t does not fall on the reviewing court." *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001).

A claimant is disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination

of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1 (the "Listings"), which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, through which the ALJ assesses the claimant's residual functional capacity and determines whether the impairments prevent the claimant from doing the work she has performed in the past.

An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final Step asks whether the claimant can perform other work available in the national economy in view of her residual functional capacity, as well as age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving she cannot return to her former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz*, 890 F.2d at 524. Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of her insured status, or her date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

# BACKGROUND

Cancel-Vientós was born on April 15, 1966. Transcript ("Tr.") 48. She received a Bachelor's degree in office administration from the University of Puerto Rico, Mayagüez campus. Tr. 48; 558. She worked as a secretary for a judge in Mayagüez for 23 years. Tr. 51. As a secretary, she managed the judge's office and courtroom. Tr. 52. She gradually developed certain ailments discussed in greater detail below, and quit her job as secretary in September 2019. Tr. 558; *infra* pp. 4-8. In December 2019, she worked for around one month at JC Penney as a cashier and dressing room clothes sorter, but the position was temporary. Tr. 51. She applied for social security benefits on August 11, 2020, claiming a disability onset date of September 9, 2019. Tr. 23. Her date last insured is December 31, 2024. Tr. 25.

Next is a summary of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the social security transcript.

A. **Medical History**

**Dr. Omayra Rivera Rivera**

The record contains progress notes from Dr. Omayra Rivera Rivera, a psychologist, dating from November 2018 to January 2021. Tr. 208-220; 264-272; 813-820; 898-901. The progress notes record that Cancel-Vientós's son suffered from drug addiction and died of an overdose in April 2020. Tr. 58; 213; 815. They also note that her father passed away in December 2019. *Id*; Tr. 815. Both events caused considerable sadness to Cancel-Vientós. Tr. 210; 213; 272. The progress notes record moods of anxiety, anguish, sadness, depression, and (sporadically) hopelessness. Tr. 208-220; 264-272. However, they also consistently note that she was punctual, had appropriate appearance, orientation in four spheres, logical and coherent thought and speech process, appropriate judgment, good recent and remote memory, and appropriate psychomotor expression. *Id*.

**Dr. Ronald Malavé Ortiz**

The transcript contains various records from Dr. Ronald Malavé Ortiz, a psychiatrist. Tr. 228-235; 285-291; 839-844; 880-888; 929-933; 978-984. An initial intake note dated October 21,

2020 details the anguish felt by Cancel-Vientós following the death of her son. Tr. 229; 832. Her daughter, mother, and husband provided emotional support following her son's passing. *Id*. Her marriage was described as "happy." Tr. 233. She noted that she woke frequently in the night, rarely feels rested, has decreased enjoyment, feelings of guilt, decreased energy level, and frequent crying. *Id*. The note also indicates that she experienced physical conditions of hand pain and lumbar ache. Tr. 230.

Dr. Malavé Ortiz also provided progress notes from October 2020 to May 2022. Tr. 839-844; 880-888; 929-933; 978-984. The progress notes list diagnoses of major depressive disorder, adjustment disorder, and death of a family member, while also noting ongoing medical issues of carpal tunnel syndrome and osteoarthritis. Tr. 840; 843; 930-932. The progress notes attest to Cancel-Vientós's depression and anxiety following the death of her son. Tr. 843. However, her mood appears to have improved over the period covered by the progress notes. *See* Tr. 884. The notes also attest to her insomnia and nightmares. Tr. 930. However, these also reportedly improved over time. Tr. 980. Dr. Malavé Ortiz consistently noted that she was alert, oriented in time, place, and person, cooperative during interviews, and with intact judgment, insight, and cognitive functioning. Tr. 839-844; 880-888; 929-933; 978-984.

**Dr. Joanna Barbosa Soler**

Dr. Joanna Barbosa Soler provided a psychological Consultative Examination dated October 24, 2020. Tr. 235-244; 846-854. During the exam, Cancel-Vientós attested to lumbar pain and carpal tunnel syndrome. Tr. 238. She reported being able to do household chores such as cooking, washing, tidying her room, and doing the laundry. Tr. 240. Dr. Barbosa Soler noted that she was cooperative but not spontaneous, spoke with a normal tone of voice, had an organized, logical, and coherent thought process, and was oriented in time, place, and person. Tr. 241. Overall, Dr. Barbosa Soler found that she had depression, but no cognitive impairment. Tr. 244. Her concentration, judgment, memory, and intellectual level were rated as adequate or average. *Id*.

### Dr. Oscar Vargas

The record contains several notes from Dr. Oscar Vargas. Tr. 655-665; 890-897; 939. The ALJ indicated in her opinion that Dr. Vargas is a hand surgeon who performed surgery on April 27, 2012 and diagnosed carpal tunnel syndrome in September 2021. Tr. 33. However, Dr. Vargas's own notes are largely illegible.

### Dr. Ivan Martinez Deliz

The record contains a medical progress note from Dr. Ivan Martinez Deliz, a physiatrist, dated September 16, 2019. Tr. 689-691. The progress note is illegible.

### Dr. Jorge Padilla Rodríguez

The record contains progress notes from Dr. Jorge Padilla Rodriguez dating from June-August 2017, before her claimed initial onset date. Tr. 666-688. Cancel-Vientós visited Dr. Padilla Rodriguez due to her back pain. Tr. 682. Dr. Padilla Rodriguez noted that her range of motion was limited in her spine. Tr. 683. She was instructed to rest for a week and then perform daily home exercises. *Id*. She began to feel better by July 10, but the pain re-intensified on July 12. Tr. 675; 677. Over the next several weeks, her pain began falling again. *See* Tr. 669; 673. By the final progress note, Dr. Padilla Rodriguez noted that she needed a new prescription and that her symptoms had returned. Tr. 666.

### Dr. Michael Babilonia Román

Dr. Michael Babilonia Román, a rheumatologist, treated Cancel-Vientós since 2016 and provided extensive medical records. *See* Tr. 34; 249-254; 708-718; 739-751; 860-872; 874-879; 902-904; 962-977. Progress notes provided from between June 2018 and March 2022 indicate normal ENT, cardiopulmonary function, abdomen, neurological function, and skin, with only musculoskeletal function marked as abnormal. *Id*. The rest of these progress notes are illegible.

Dr. Babilonia provided a Consultative Examination dated November 4, 2020. Tr. 249-254; 860-871. All of her joint movements were described as normal (including hands), except for a restriction in the lumbar spine. Tr. 250. He noted that she reported moderate to severe pain in the cervical and lumbar spine area, joints of both shoulders, both knees, and both hips, as well as

moderate pain in all joints of all digits in both hands. Tr. 251. Her motor strength was rated "excellent." Tr. 252. Her gait was described as normal, with her strength preserved and no limping. Tr. 870. The Consultative Examination provided diagnoses of osteoarthritis, osteopenia, lumbar disc disease, depression, and carpal tunnel syndrome. Tr. 253.

Dr. Babilonia also provided a Medical Source Statement dated February 4, 2021. Tr. 902-904. Dr. Babilonia indicated that she could sit for six hours and stand/walk for two hours, with rests. Tr. 903. Her ability to lift and carry weight was limited, and her ability to bend, squat, crawl, climb, or kneel was rare or never. *Id*. Dr. Babilonia indicated that she would need unscheduled breaks during an eight-hour workday and would need to be absent more than four days per month. *Id*. Further, he opined that she was limited in gross and fine manipulations in her hands, and reaching in her arms, to around two hours of activity per day. *Id*.

In an attached hand assessment performed on March 18, 2020, Dr. Babilonia noted pain and tenderness in her hands, while noting that other hand impairments were absent. Tr. 904. Her Tinel and Phalen tests were both negative, suggesting that she did not have carpal tunnel syndrome or had a mild condition. *Id*. Her hand function was largely preserved, with her strength preserved at a level of 4/5. *Id*.

**Dr. Arturo López Rivera**

The record contains progress notes from Dr. Arturo López Rivera, a physical medicine & rehabilitation physician at Centro Fisiatrico del Oeste. Tr. 153-167; 276-284; 756-771; 905-926; 940-959. Dr. López Rivera treated Cancel-Vientós for pain in her hands, hip, and back between 2020 and 2021. He noted that she had chronic lower back pain and invertebral disc disorders. Tr. 958. Various treatments and therapies attempted to address her back pain, with mixed results overall. *See* Tr. 905; 917 (trans. at Tr. 278); 923; 956. He described her bilateral carpal tunnel syndrome as mild, noting that the right-hand was more affected than the left. Tr. 757. While the 2020 progress notes record hand pain, the December 2020 note records considerably reduced pain, and the 2021 notes no longer report continuing hand pain. Tr. 278; 913; 917; 923; 940; 944; 948;

956. Progress notes from 2020 and 2021 consistently record full range of motion in her hands. *See, e.g.*, Tr. 914; 945.

### Dr. Rosanna Ramos Martell

Dr. Rosanna Ramos Martell, a general practitioner, provided progress notes dating from between September 2016 until August 2020. Tr. 168-207; 772-810. Dr. Ramos Martell's final progress note listed diagnoses of unspecified mood disorder, carpal tunnel syndrome, spinal cord disease, and inflammatory spondylopathy of the lumbar and cervical region. Tr. 774. The final progress note also indicated pain and weakness in her extremities. Tr. 773. This was consistent with a previous progress note from May 2020. Tr. 776. Earlier progress notes included more sporadic diagnoses, including radial styloid tenosynovitis, osteoarthritis, general back pain, hepatomegaly, scerlosing mesenteritis, mesenteric panniculitis, pelvic pain, and an upper respiratory tract infection. Tr. 781; 789; 792; 801; 805.

### Dr. Marisol Rivera Misla

Dr. Marisol Rivera Misla performed a facet or median branch block procedure on May 23, 2022 to treat Cancel-Vientós's spine. Tr. 1000-1003. She apparently tolerated the procedure well, Tr. 1000, and the record contains no evidence of any subsequent complications.

### Dr. Brenda Concepción

Dr. Brenda Concepción, a state agency medical consultant, performed evaluations of Cancel-Vientós's physical conditions on October 7 and November 9, 2020. Tr. 292-316; 831; 873. Dr. Concepción found that Cancel-Vientós had severe conditions of DDD (discogenic and degenerative disorders of the back), dysfunction in major joints, and carpal tunnel syndrome. Tr. 303. Dr. Concepción considered listings 1.02, 1.04 and 12.04, but concluded that she did not meet or equal any of these listings. Tr. 304; 307. Dr. Concepción concluded that her residual functional capacity prevented her from performing her past relevant work, but found that she maintained residual functional capacity for simple and detailed work. Tr. 301; 314. Dr. Concepción also noted transferrable skills. Tr. 301; 315. She concluded that Cancel-Vientós was not disabled.

On February 11, 2021, Dr. Concepción's opinion was reviewed by Dr. Cristina Ortiz, another state agency medical consultant. Tr. 325-344. Dr. Concepción's opinion was found to be substantially correct and upheld on reconsideration. *Id*.

**Dr. Hugo Román Rivera**

Dr. Hugo Román Rivera, a state agency medical consultant, performed an evaluation of Cancel-Vientós's mental conditions on December 9, 2020. Tr. 303-316; 889. Dr. Román Rivera found that she had a severe condition of depressive, bipolar and related disorders. Tr. 303. However, he found that she did not meet or equal listing 12.04. In so finding, Dr. Román Rivera opined that her mental functions were mostly preserved and that she was able to perform simple and detailed tasks, persist for two-hour intervals, interact with others, and adjust to changes in work settings. Tr. 304.

On February 11, 2021, Dr. Román Rivera's opinion was reviewed by Dr. Zulma Nieves, another state agency medical consultant. Tr. 325-344. Dr. Nieves noted new progress notes from Dr. López Rivera and Dr. Malavé Ortiz, but found that these were consistent with previous notes. Tr. 329. Dr. Nieves concluded that Dr. Román Rivera's opinion was substantially correct on reconsideration. *Id*.

**B. Procedural History**

Cancel-Vientós's application was reviewed by ALJ Judith Torres-De Jesus, who held a hearing on August 15, 2022. Tr. 48-84. During the hearing, Cancel-Vientós testified about her work experience as a secretary for a judge. Tr. 52. Her job involved managing the office and the courtroom for the judge – answering the phone, coordinating visits, and managing daily dispatch. *Id*. She would also transcribe resolutions, orders, and sentences, and would prepare administrative reports. *Id*. Her job was performed in eight-hour shifts. *Id*.

Next, Cancel-Vientós testified about her physical and mental conditions. She told the ALJ about her carpal tunnel syndrome, which she had since 2003. Tr. 53. She described her 2012 surgery on her right hand due to a ruptured tendon. *Id*. To manage her carpal tunnel syndrome, she sleeps with a splint in her right hand. Tr. 57. She suffers from lower back pain and cervical pain.

Tr. 53. She has received physical therapy, injections, and pain blocks for her back pain. Tr. 54. She then described her arthritis, present in both hands. Tr. 58. As for her mental conditions, she had been seeing a psychiatrist (Dr. Malavé Ortiz, *see supra* p. 4-5) because of trouble sleeping and depression. Tr. 53. Her depression was initiated by the passing of her son in 2020. Tr. 58. Her depression impairs her concentration and memory. Tr. 60. She lives with her husband and daughter, who can provide support, but she is also able to dress and bathe herself with difficulty. Tr. 60-61. While she can still drive, her husband assists with household chores and shopping. Tr. 62. She attends a nearby church regularly, reads motivational and self-help books, and watches religious services and preaching online. Tr. 63.

Next, Cancel-Vientós answered follow-up questions from her attorney. She explained that she has difficulty picking up and grasping objects. Tr. 64. She is no longer able to type on a computer. *Id*. Her handwriting is significantly impaired. *Id*.

Next, the ALJ questioned two medical experts who joined the hearing by phone. First, Dr. Wildaliz Caro González provided testimony about Cancel-Vientós's mental conditions. Tr. 64-66. Dr. Caro Gonzaléz summarized the evidence on her mental conditions, opining that she did not have any cognitive impairment or meet Listing 12.04. Tr. 65-66. Second, Dr. Gilberto Muñoz provided testimony about her physical conditions. Tr. 67-71. He opined that she had severe conditions of disc impairments at the cervical level and bilateral carpal tunnel syndrome. Tr. 67. Dr. Muñoz opined that she did not meet any Listings, considering Listing 1.15 and 1.18. *Id*. He described her functional limitations as "light," noting that her carpal tunnel syndrome would impair her ability to handle objects. *Id*. Cancel-Vientós's attorney followed-up by asking her why he did not consider her arthritis. Dr. Muñoz claimed that he did not see an MRI, x-ray, or anything that would confirm an arthritis diagnosis. Tr. 69. However, he acknowledged that he had not reviewed the entire medical record, and had not reviewed the Consultative Examination prepared by Dr. Babilonia. *Id*.

Next, Luisa Suess, vocational expert ("VE") for the Social Security Administration, was questioned by the ALJ. VE Suess originally classified Cancel-Vientós's previous work as a judge's

secretary as "court clerk." Tr. 71. VE Suess found that this job did not provide any transferrable skills since it was specialized. Tr. 72-73. Cancel-Vientós's attorney contested the court clerk categorization, arguing that "legal secretary" would be more appropriate since the former contemplated work inside the courtroom. Tr. 73-77. Her attorney pointed out that a legal secretary has to frequently type on the computer, whereas a court secretary only performs this task occasionally. Tr. 76-77. The ALJ then asked VE Suess if someone with Cancel-Vientós's education and experience, limited to light work, and limited to only "frequent" use of her right hand,[1] could perform work as a court clerk or as a legal secretary, and VE Suess confirmed that such a person could. Tr. 77-78. If limited to simple and routine tasks, such a person could no longer do either of these jobs, but could do other jobs in the national economy. Tr. 78. Cancel-Vientós's attorney then asked if someone limited to light work, but with an additional limitation of "occasional" manipulation in her hands, could perform the court clerk and/or legal secretary jobs. Tr. 78-79. VE Suess opined that such a person could not do the legal secretary job, but could perform the court clerk job. Tr. 78-79. If further limited to sedentary work with the hand limitation specified, the hypothetical person could not perform the legal secretary job but could still perform the court clerk job. Tr. 79. Last, the attorney asked if someone limited to light work, occasional hand manipulation, and who needed to be absent four or more days per month could perform any job in the national economy, and VE Suess confirmed that such a person could not perform any work. Tr. 79-80.

The hearing concluded with a closing argument from Cancel-Vientós's attorney. The attorney stressed that Dr. Muñoz only reviewed five exhibits, while the record contained forty-three exhibits in Part F alone. The attorney summarized some of the conditions from the record, listing her left-hand repair in 2012, needle testing in 2017 showing a bilateral radiculopathy, lumbar radiculopathy, diminished reflexes in her left leg, diminished sensation in dermatome S1

---

[1] The Commissioner defines "frequent" use as occurring from one-third to two-thirds of the time. "Constant" use occurs two-thirds or more of the time. *See* Medical and Vocational Quick Reference Guide, SSA Program Operations Manual System, DI 25001.001 at ¶ 34, available at https://secure.ssa.gov/poms.nsf/lnx/0425001001 (last visited Mar. 18, 2025).

vertebra, bulging discs causing canal stenosis, osteophytes, bilateral carpal tunnel syndrome, pain and decreased strength in her hands, and osteoarthritis. Tr. 80-82. He then pointed to Dr. Babilonia's Medical Source Statement, specifically the observations that she was limited in hand function to two hours per day and would require four or more days off per month. Tr. 82. Per his hypothetical posed to VE Suess, someone with these conditions could not perform Cancel-Vientós's past relevant work or any other work in the national economy. *Id*. He concluded by stressing that Cancel-Vientós's past relevant work matches the legal secretary category rather than the court clerk category. *Id*.

The ALJ issued her opinion on March 30, 2023. Tr. 23-39. The ALJ found that Cancel-Vientós 1) had not engaged in any substantial gainful activity since the disability onset date (September 9, 2019), 2) had two severe impairments, lumbar & cervical degenerative disc disease and carpal tunnel syndrome, 3) did not have a condition that met the severity of one of the Listings, 4) maintained residual functional capacity for light work with additional limitations, and 5) could return to her former employment as a legal secretary. *Id*.

The ALJ found that Cancel-Vientós's adjustment disorder with depressed mood, while medically determinable, did not cause more than a minimal limitation on her ability to perform basic work activities. Tr. 26. She noted that Cancel-Vientós was apparently able to take care of her hygiene, medications, and funds, and that she could cook, shop online, visit her mother every day, and read. Tr. 29. Regarding interaction with others, she reported no problems getting along with family, friends, neighbors, or people in authority. Tr. 30. She found Dr. Barbosa Soler's opinion on her mental conditions partially persuasive, noting its consistency with previous diagnoses but also its lack of a function-by-function analysis. Tr. 28. The DDS consultants, Dr. Román Rivera and Dr. Nieves, were considered partially persuasive since they lined up with unremarkable findings in the progress notes and Dr. Barbosa Soler's Consultative Examination. Tr. 29. On the other hand, the ALJ found Dr. Caro's opinion during the hearing highly persuasive because on her longitudinal review of the record and detailed explanation with references in the record to support her opinion. *Id*.

The ALJ found that Cancel-Vientós maintained residual functional capacity for light work, with additional limitations in environment and with her right-hand function limited to "frequent" use. Tr. 32-38. The ALJ noted that Cancel-Vientós could drive a car, go to the grocery store, visit her mother every day, watch television, read, do household chores, and follow instructions. Tr. 33. She could also take her own medication, care for her personal hygiene, manage her finances, and get along with family, friends, neighbors, and authority. *Id*. The ALJ found that Dr. Babilonia's opinion on her exertional and hand limitations were not persuasive since they contradicted objective evidence in the medical record. Tr. 36. While the medical evidence noted difficulties in fine motor coordination and repetitive movements in her hands, the ALJ concluded that the evidence pointed to mild conditions that would not preclude all work. *Id*. The ALJ considered Dr. Muñoz's opinion highly persuasive due to his longitudinal review of the record and detailed explanation with references to the evidence in the record to support his opinion. *Id*. The ALJ did not note Cancel-Vientós's attorney's concern about whether Dr. Muñoz reviewed all of the exhibits in forming his opinion. As for the DDS consultants, Dr. Concepción and Dr. Ortiz, the ALJ found them partially persuasive, disagreeing with the degree to which her physical impairments would cause functional restrictions. Tr. 37. While the DDS consultants found she was capable of light work, the ALJ found extra restrictions considering her physical impairments and environmental limitations. *Id*.

Last, the ALJ explained that Cancel-Vientós could return to her previous work as legal secretary given her residual functional capacity. Tr. 38-39. The ALJ noted VE Suess's testimony that someone with Cancel-Vientós's age, education, and experience, limited to light work and frequent right-hand function, could perform the legal secretary job. Tr. 38. The ALJ found that Cancel-Vientós's attorney's hypotheticals posed to VE Suess, containing more severe limitations of occasional use of right hand and four or more absences per month, did not reflect her physical and mental conditions as supported by the medical record. *Id*.

The ALJ concluded that Cancel-Vientós was not disabled during the insured period. Tr. 39. The Appeals Council denied review, Tr. 1-4, and this action followed.

# DISCUSSION

Cancel-Vientós raises three main arguments challenging the ALJ's decision finding her not disabled. She contends that the ALJ 1) improperly relied on VE Suess's incorrect characterization of her previous work as court clerk or circulation clerk, when the correct category is legal secretary, 2) erred in assessing her residual functional capacity, and 3) should have applied the Medical-Vocational Guidelines to conclusively find her disabled. I will consider each argument below.

### A. Characterization of Previous Work

First, Cancel-Vientós alleges that the ALJ improperly relied on an incorrect characterization of her previous work. She claims that VE Suess incorrectly characterized her previous job as a "court clerk" per DOT 243.362-010. The court clerk occupation is sedentary with an SVP ranking of six. Tr. 71. Instead, she claims that the correct category for her previous employment is "legal secretary," DOT 201.362-010. The legal secretary occupation is also sedentary with an SVP raking of six. Tr. 77. Due to this mistake, Cancel-Vientós argues, VE Suess inaccurately described the requirements of her past relevant work, which caused the ALJ to erroneously find that Cancel-Vientós was capable of returning to that work.

Cancel-Vientós is incorrect – VE Suess did in fact describe the legal secretary occupation during the hearing, in addition to the court clerk occupation. *See* Tr. 77 ("Legal secretary prepares legal papers and correspondence of legal nature . . ."). Cancel-Vientós's insistence to the contrary stems from the fact that VE Suess appears to have misspoken when stating the DOT number for this position, providing the number as 209.362-010 instead of 201.362-010. The former is the DOT number for "circulation clerk." However, the description of the job provided by VE Suess matches that for legal secretary, not circulation clerk, indicating that VE Suess misspoke when reading the number. This is confirmed later on in the hearing, when VE Suess confirms that a person with Cancel-Vientós's conditions could perform the work either of court clerk or legal secretary. *See* Tr. 87. And in her opinion, the ALJ specifically found that Cancel-Vientós could perform her past relevant work *as a legal secretary*, citing the correct DOT number. *See* Tr. 38. Therefore, Cancel-Vientós's first argument is without merit.

### B. Residual Functional Capacity

Cancel-Vientós's second argument is that the ALJ erred in assessing her residual functional capacity. Specifically, she claims that the ALJ's decision overstates her right hand function, which can occur no more than "occasionally," and ignores her required absences of at least four days per month. She stresses that Dr. Babilonia's Medical Source Statement states she was limited in gross and fine manipulation in her hands and fingers to two hours per day, with over four expected absences per month. Cancel-Vientós also takes issue with the ALJ's reliance on Dr. Muñoz's opinion and apparent disregard of Dr. Babilonia's Medical Source Statement, even though the latter was a treating physician for ten years while the former did not personally examine her nor review her entire medical record.

Cancel-Vientós is correct in noting that the length of a treatment relationship is one factor that the ALJ should consider when weighing opinion evidence. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5) (listing five factors considered when weighing opinion evidence). However, treatment relationship is just one factor – other factors such as supportability and consistency of the opinion are also considered. *Id*. I find that the ALJ's rejection of Dr. Babilonia's limitation findings in favor of a less restricting residual functional capacity is warranted by the evidence on the record. Dr. Babilonia's own assessments of Cancel-Vientós's hand conditions are not entirely consistent. While admittedly earlier than his Medical Source Statement, Dr. Babilonia's hand assessment noted her ability to grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick up a coin, and write. *See* Tr. 904. He also noted pain, tenderness, and nodes in her hands, but described them as mild. *Id*. Her Tinel and Phalen tests were negative, suggestive of mild or no carpal tunnel syndrome. *Id*. Her muscular strength in her hands was listed as 4/5 for each hand. *Id*. And his Consultative Examination, while noting pain and diagnoses of carpal tunnel syndrome and osteoarthritis, also states that her hands and digits had normal movements and excellent motor strength. Tr. 250-253. Other treating sources are consistent with the ALJ's assessment of her hand impairments as mild. Specifically, Dr. López Rivera described her bilateral carpal tunnel syndrome as mild and consistently noted that she had full range of motion in her hands. *See supra* p. 7. And

while he notes her hand pain in progress notes from early 2020, by 2021 it appears that this condition improved under treatment. *Id*.

Similarly, the ALJ had support for rejecting Dr. Babilonia's finding that Cancel-Vientós would need four or more daily absences per month. The ALJ noted that Cancel-Vientós's conditions have been treated routinely and conservatively, with no evidence of significant worsening or that her conditions create profound limitations. Tr. 37. The ALJ also specifically pointed to evidence that Cancel-Vientós does chores around the home, drives a car independently, goes shopping, takes care of her hygiene, manages her finances, goes to doctors' appointments, and relates well to family, friends, and people in authority. *Id*. And opinion evidence from other sources described her as punctual (Dr. Omayra Rivera Rivera, *supra* p. 4) and found adequate attention and concentration (Dr. Barbosa Soler, *supra* pp. 5-6).

Therefore, I find that the ALJ's residual functional capacity assessment is supported by substantial evidence. Cancel-Vientós's claims on this point do not constitute grounds for reversal.

### C. Medical-Vocational Guidelines

Cancel-Vientós's final argument is that the ALJ should have applied Rule 201.06, 202.06, or 201.14 of the Medical-Vocational Guidelines under 20 C.F.R. § 404 Subpart P, Appendix 2, Regulation No. 4, under which she ought to be found conclusively disabled. However, Cancel-Vientós's invocation of these rules is misplaced. The Medical-Vocational Guideline rules apply at Step Five of the sequential disability analysis outlined above – in other words, they apply to determine whether an individual who cannot perform past relevant work is capable of performing any other work in the national economy. *See Bulpett v. Heckler*, 617 F. Supp. 850, 853 (D. Mass. 1985) (outlining the purpose and application of the medical-vocational guidelines). Cancel-Vientós confuses the ALJ's Step-Four decision for a Step Five decision. *See supra* pp. 2-3. The ALJ determined that she was capable of returning to her previous work as a legal secretary. Whether other jobs exist in the national economy that Cancel-Vientós can perform was not a question that the ALJ reached in her decision. Therefore, Cancel-Vientós's final argument does not provide grounds for reversal.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of March, 2025.

                                        **S/Bruce J. McGiverin**
                                        BRUCE J. McGIVERIN
                                        United States Magistrate Judge